## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Louis J. Tenore, being duly sworn, state the following:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a currently employed as a Special Agent with the Drug Enforcement Administration (DEA) in New England Field Divisions, and have been so employed since 2004. I am assigned to the New Bedford Resident Office, Heroin Enforcement Group, which is a federal task force that focuses on narcotics trafficking domestically as well as internationally.

2.     The DEA is responsible for the enforcement of federal controlled substances laws. As a DEA Special Agent, I have received training and conducted or assisted in numerous federal drug investigations. I have debriefed numerous defendants, informants, and witnesses with personal knowledge regarding major drug trafficking organizations. Additionally, I have participated in many aspects of drug investigations including undercover operations, conducting surveillance, and arrests. The investigations in which I have participated have been related to the unlawful importation, possession, and distribution of controlled substances, the laundering of the proceeds of illegal activities, and the acquisition of firearms by drug traffickers for the purpose of furthering illegal activities.

3.     Based on my training, personal experience, and participation in criminal investigations, I have become familiar with the means and methods that drug traffickers use to import and distribute illegal drugs and with the support and assistance that drug trafficking organizations require to conduct their illegal activities. I am familiar with the methods and techniques used by individuals engaged in drug trafficking, including: the distribution, storage, and transportation of drugs; the collection of money proceeds of drug trafficking; the methods of money laundering used to conceal the nature of the proceeds; and the use of coded and cryptic

1

language in drug deals.

4. I am currently investigating Malik D. BEAN-BOUSSEAU and Malik D. PARSONS for violations of 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), 21 U.S.C. § 846 (conspiracy to distribute and to possess with intent to distribute controlled substances), 18 U.S.C. § 924(c)(1) (use or possession of a firearm in furtherance of a drug trafficking offense), and 18 U.S.C. § 922(k) (possession of a firearm with an obliterated serial number).

## PURPOSE OF AFFIDAVIT

5. This affidavit is being submitted in support of an application for warrants to search electronic equipment, specifically a red Apple iPhone and a blue Apple iPhone that are believed to have been used by PARSONS (collectively, the "Subject Phones"), that are in the possession of law enforcement investigators, as described in Attachment A. There is probable cause to believe that the equipment contains evidence, fruits, and instrumentalities of the crimes listed above, as described in Attachment B.

6. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrants and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

7. On November 30, 2021, BEAN-BOUSSEAU and PARSONS were indicted by a federal Grand Jury in the District of Massachusetts, *see* No. 21-cr-10343-NMG, Dkt. 1. The offenses charged in that indictment include Conspiracy to Distribute and to Possess with Intent to Distribute 40 Grams or More of Fentanyl and 500 Grams or More of Cocaine, in violation of 21

U.S.C. § 846; Possession with Intent to Distribute 40 Grams or More of Fentanyl and 500 Grams or More of Cocaine and Aiding and Abetting, in violation of (21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii) and (b)(1)(B)(vi), and 18 U.S.C. § 2; Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c); and Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. § 922(k).

## Background of Investigation

8.     The offenses charged in the indictment relate to an investigation at the One Mansfield Apartments, located at One Mansfield Avenue, Mansfield, Massachusetts ("One Mansfield"), that began around March 2021, after law enforcement received information about possible prostitution at One Mansfield, Apartment #A311. The lease for Apartment #A311 was signed in October 2020 by Shauntae Wilson, who was the only person on the lease. Based on information from property management at One Mansfield, Wilson was not observed at the apartment, but the key fob for that apartment was used almost daily by two males, who were identified by their vehicle registrations as PARSONS and BEAN-BOUSSEAU.

9.     On April 8, 2021, a Mansfield Police Department Officer observed a Jeep Grand Cherokee that PARSONS was driving. The vehicle was registered to PARSONS at a residence in Dorchester, Massachusetts, but the registration was expired and "non-renewable." The officer followed the Jeep and conducted a traffic stop when the Jeep pulled into the front parking lot of One Mansfield. PARSONS told the officer that he was unaware that the registration was expired. PARSONS also told the officer that he had recently moved to apartment 310 at One Mansfield. The officer noted that the registration listed PARSONS's residence at an address in Dorchester. PARSONS replied that he had forgotten to change it and had moved to One Mansfield "a few months ago" from his grandmother's residence in Dorchester. PARSONS requested that he be

allowed to park the Jeep in the rear parking lot at One Mansfield. The officer spoke to a manager at One Mansfield who stated that PARSONS's Jeep could not be parked in the rear lot because he was not a registered resident at One Mansfield. At the conclusion of the stop, PARSONS requested that the Jeep be towed to an address in Norton, Massachusetts.

10. Between May and August 2021, investigators monitored the activity at One Mansfield through physical surveillance and covert cameras installed at One Mansfield pursuant to state search warrants. Beginning around May 2021, one such camera was installed in the hallway outside the door to Apartment #A311, which captured the comings and goings from that apartment. Through physical surveillance and video surveillance from the covert cameras inside One Mansfield, PARSONS and BEAN-BOUSSEAU were observed entering and exiting Apartment #A311 on a regular basis. No other individuals were observed on surveillance entering the apartment without either PARSONS or BEAN-BOUSSEAU. It did not appear that either was living at the apartment; routinely, PARSONS and BEAN-BOUSSEAU would enter the apartment, stay inside for about an hour, change clothes in the hallway, then leave the apartment building. PARSONS was observed staying at the apartment overnight about 10 times between May and August 2021.

11. As one example of PARSONS's activity observed through surveillance, on June 4, 2021, video from the hallway outside of Apartment #A311 captured PARSONS exiting the apartment. In the video, PARSONS is seen putting on his sneakers in the hallway outside of the apartment. While putting his sneakers on, he looks at his left hand, which appears to be holding small bags of a white powdery substance, and appears to be counting the white bags in his hand.

12. On July 7, 2021, law enforcement surveillance observed PARSONS exit the apartment with a white plastic trash bag and throw it in a public trash barrel on the sidewalk. Law

enforcement recovered the trash bag, which was under constant surveillance, and found inside clear cellophane baggies with the corners twisted off. Lab testing confirmed that residue in the bags contained fentanyl. I know from my training and experience in narcotics investigations that drug traffickers use this type of clear plastic bag to repackage narcotics for resale.

13.     On various dates between May and August 2021, law enforcement conducted surveillance of PARSONS and BEAN-BOUSSEAU outside of One Mansfield after they left the apartment. During this surveillance, PARSONS and BEAN-BOUSSEAU were observed on multiple dates driving from One Mansfield using back roads to seemingly random locations where they would stop for brief periods of time and, at some stops, were observed having brief meetings with other unknown individuals. For example, on June 21, 2021, aided by a GPS tracker that was installed on a vehicle registered to PARSONS pursuant to a state search warrant, law enforcement observed PARSONS and BEAN-BOUSSEAU drive together from the One Mansfield apartment and make several seemingly random stops in Brockton, each for a brief period of time. During one stop, a female approached the passenger side door of their vehicle, and spent just a few seconds at the vehicle before leaving. Based on my training and experience, this conduct is consistent with PARSONS and BEAN-BOUSSEAU conducting illegal drug transactions.

14.     Law enforcement observed PARSONS on numerous occasions between May and July 2021 using a cell phone while entering or exiting the One Mansfield apartment, and while in his vehicle during times when PARSONS and BEAN-BOUSSEAU were observed conducting apparent hand-to-hand drug transactions.

15.     PARSONS was last captured on the surveillance video entering Apartment #A311 with BEAN-BOUSSEAU on July 31, 2021. PARSONS was carrying a green shopping bag when he entered the apartment.

**Search Warrants Executed on August 2, 2021**

16. On August 2, 2021, law enforcement executed state search warrants at One Mansfield Apartment #A311. Law enforcement executed the warrants as BEAN-BOUSSEAU was exiting the apartment. On his person, BEAN-BOUSSEAU had, among other things, the key to Apartment #A311, over $2,800 in cash, and bags of suspected illegal drugs. Subsequent lab testing confirmed that the drugs seized from BEAN-BOUSSEAU's person totaled approximately 123 grams of a fentanyl and approximately 13 grams of cocaine base. Law enforcement also seized a cell phone BEAN-BOUSSEAU's person. A subsequent search of that cell phone revealed text messages between BEAN-BOUSSEAU and Shauntae Wilson discussing, among other things, BEAN-BOUSSEAU making rent payments for the One Mansfield apartment.

17. From inside the apartment, law enforcement seized suspected illegal drugs from the kitchen and living room. Subsequent lab testing confirmed that the drugs seized from inside the apartment totaled approximately 697 grams of cocaine and 273 grams of cocaine base. Law enforcement also seized two digital scales.

18. In addition to drugs, law enforcement seized two firearms from the closet inside the apartment: (i) a Ruger 5.7mm semiautomatic handgun with a loaded high capacity magazine stored in close proximity; and (b) a Glock 9mm semiautomatic handgun with an obliterated serial number and a loaded high capacity magazine stored in close proximity.

19. Based on law enforcement observations of the comings and goings at the One Mansfield apartment, the observations of PARSONS and BEAN-BOUSSEAU outside of One Mansfield after they left the apartment, and the August 2, 2021 seizure of drugs, scales, and firearms, I believe that Apartment #A311 was used by PARSONS and BEAN-BOUSSEAU as a

location to store drugs and drug proceeds;[1] that PARSONS and BEAN-BOUSSEAU used Apartment #A311 to repackage drugs to fulfill pending drug orders from customers and then made their deliveries; and that PARSONS and BEAN-BOUSSEAU used cellular phones to communicate with each other and their drug customers.

### Investigators' Possession of the Subject Phones

20.     The Subject Phones are currently in the possession of the government, and are being stored at its facilities, as described in Attachment A.  Investigators obtained the Subject Phones after PARSONS was arrested on outstanding warrants by Massachusetts State Police ("MSP") on October 19, 2021.

21.     According to MSP reports, on October 19, 2021, MSP stopped the vehicle PARSONS was driving, with a passenger, on Interstate 90 for excessive speed and failing to keep to the right lane. Investigators later determined that the vehicle PARSONS was driving had been reported stolen.  During the routine traffic stop, troopers on scene learned that PARSONS had outstanding arrest warrants and placed him under arrest.  Because there was no licensed operator at the scene, MSP had the vehicle towed and conducted an inventory.  One of the Subject Phones was located inside the vehicle during the inventory; the passenger informed troopers that the cell phone found inside the vehicle belonged to PARSONS.  Troopers then asked PARSONS if he would like to take the cellphone.  PARSONS responded, in substance, "No, and you can take this phone out of my pocket. I don't want this either," referring to the second Subject Phone.  Per PARSONS's statement, troopers placed both Subject Phones in the vehicle before towing.

---

[1] On June 16, 2021, PARSONS and BEAN-BOUSSEAU left One Mansfield together and drove away in separate cars. Later that day, they returned and entered Apartment #A311 together. While trying to open the door, BEAN-BOUSSEAU dropped an undetermined amount of cash on the floor. Based on my training, experience, and knowledge of this investigation, I believe the dropped money was likely drug proceeds that BEAN-BOUSSEAU collected while delivering drugs to customers.

22. On December 17, 2021, a DEA Task Force Officer went to the location where the stolen vehicle PARSONS had been driving had been towed and retrieved the two Subject Phones from inside of the vehicle. The Subject Phones have been in the custody of the government since that date.

23. While the investigators might already have all necessary authority to examine the Subject Phones, I seek these warrants out of an abundance of caution to be certain that the searches comply with the Fourth Amendment and other applicable laws.

24. Based on the forgoing, there is probable cause to believe that evidence of PARSONS's and BEAN-BOUSSEAU's drug trafficking activities and other criminal activities, including the source and ownership of the firearms recovered from Apartment #A311, will be found on the Subject Phones.

### Drug Traffickers' Use of Cell Phones Generally

25. Based on training and experience, I know that most drug dealers regularly use cellular telephones to communicate about their drug trafficking activities with customers, suppliers, and other coconspirators. In my training and experience, I also am aware that drug traffickers are often aware of law enforcement's use of electronic surveillance, and thus frequently change cellular telephone numbers and/or use multiple cellular phones at the same time, as well as prepaid cellular phones (where the subscriber of the phone is not required to provide personal identifying information), in an effort to thwart law enforcement's use of electronic surveillance. Because cellular telephones are often a principal means of communication, drug dealers typically keep the phones in close proximity or at their residences.

26. Based upon my knowledge, training, and experience, I know that a cellular telephone is a handheld wireless device used primarily for voice communication through radio

8

signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include GPS technology for determining the location of the device. Based on my training and experience, I know that many cellular telephones have the capabilities described above.

27. Search of devices containing this information will provide information relating to coconspirators and accomplices. I know, based upon my training and experience, as well as consultation with other investigators, that individuals who sell illegal drugs typically use cellular telephones to communicate with their suppliers, their customers, and with other coconspirators, and that they communicate both via voice calls and via email and/or text messaging. I also know that persons who sell illegal drugs regularly keep records of their illegal activities. These records can include, but are not limited to, contact list of buyers and sellers, ledgers of sales and money owed by customers or to suppliers, and lists of quantities and/or specific controlled substances preferred by or ordered by specific customers. Individuals engaged in drug trafficking activities often take photographs of their closest confederates. Records of drug trafficking activities can be produced and maintained on paper in a tangible form and/or by electronic means on a cellular

telephone.  From my training and experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B on their cellular telephones.

28.     Additionally, I know that many drug traffickers often use cellular telephones in order to communicate quickly and economically with their suppliers and customers via the internet.  I am also aware that individuals frequently use cellular telephones to create and store records of their actions by communicating with others through e-mail, electronic messages, and updates to online social-networking websites; keeping their calendars; arranging for travel; storing pictures; researching topics related to drug trafficking; and accessing their bank, financial, investment, utility, and other accounts online.  Additionally, many cellular phones today have a GPS navigation device on the phone.  Examination of the GPS data on a cellular phone can provide valuable evidence as to the locations where drug traffickers meet with coconspirators, including their sources of supply, and can aid in identifying those individuals.  Additionally, review of GPS data can aid in identifying offsite locations where drug traffickers store drugs, maintain bank accounts, and conceal their drug proceeds.

29.     Based upon my training and experience, and information provided to me by others involved in the forensic examination of computers, I know that electronic data on cellular telephones can be stored in a variety of methods, including, but not limited to, within the memory of the cellular telephone; within volatile memory, such as RAM; or on removable media, such as memory cards.  I also know that electronic data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the internet.  This is true because:

    a.     Electronic files that have been downloaded to a storage medium can be

        stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

    b.    Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.    Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

    d.    Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser on a cellular telephone often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

30.    Based on the forgoing, including the drugs seized from the One Mansfield apartment, the activities of PARSONS and BEAN-BOUSSEAU observed by law enforcement, and the evidence of the crimes contained on BEAN-BOUSSEAU's cell phone, I have probable cause to believe that the Subject Phones obtained from PARSONS contain evidence, fruits, and instrumentalities of the drug trafficking and firearms offenses described above.

## CONCLUSION

31.    Based on the information described above, I have probable cause to believe that PARSONS and BEAN-BOUSSEAU have violated 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), 21 U.S.C. § 846 (conspiracy to

distribute and to possess with intent to distribute controlled substances), 18 U.S.C. § 924(c)(1) (use or possession of a firearm in furtherance of a drug trafficking offense), and 18 U.S.C. § 922(k) (possession of a firearm with an obliterated serial number).

32.  Based on the information described above, I also have probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are contained within the Subject Phones described in Attachment A.

Sworn to under the pains and penalties of perjury,

_____
Louis J. Tenore
Special Agent, DEA

Subscribed to and sworn before me telephonically in accordance with the requirements of Fed. R. Crim. P. 4.1 on February  16 , 2022.

_____
Honorable Jennifer C. Boal
United States Magistrate Judge